Good afternoon and may it please the court. My name is Kevin Crabtree and I represent petitioner Ricardo Gonzalez-Rodriguez. Can you hear me? Yes we can. Thank you. There are two petitions, a number of issues. We feel the easiest way to dispose of this case in our favor is by focusing on the board's failure to address mental health within the context of the diligence finding, and we would point the court to the record at page 320, the psych eval that we filed, which found the petitioner suffers from post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. This evaluation very specifically lists the symptoms he's experiencing, all of which clearly would be relevant to preparing an asylum application, trusting an and filing the motion that he filed where agency regulations require the application to be submitted as evidence in support of the motion. The symptoms that the evaluator noted included his classic, the characteristic avoidance symptoms, avoiding people, places, and things that remind him of his past trauma, which was very severe. There is long-term distress that substantially interfered with his normal daily function and relationships. He is experiencing a negative cognition and mood, including a persistent belief that no one can be trusted. So all of these things would naturally impact him in what he had to do during those years after he was removed and had some that something was wrong with his case. It should be, he had 16 years where he didn't do anything to pursue his case, and he acknowledged in his declaration that he knew in 2001, I think that he said something was wrong with his case. And then you're saying that the time should be equitably told because of his diagnosis, but what changed? I mean, why is it with his diagnosis that in 2017, after seeing the television news report about his former attorney, that he was able to overcome those issues and take another year, another year after the news report to eventually file the motion to reopen? It does seem that being aware of the arrest was something that pushed him forward to be able to seek help. I can't speculate as to all of the factors in his mind that it's a very complicated situation, but the board did not consider at all any of the mental health symptoms, and the court's precedent required it to consider the specific circumstances of the petitioner. Here, they just didn't make any reference to it at all. Counsel, could I follow up right at that point? You're affirmatively stating the board did not consider this evidence. Is the problem that they didn't leave an indication they did? There is, in Colby Holder, the court found that where there is potentially dispositive evidence, and that's very probative, and it's not referenced at all, that this is an indication that the agency did not consider the evidence. The government's position is that it did consider the evidence by a simple citation to his and your response to that is? If that's correct, then the court should find that the decision was not supported by substantial evidence, and that's actually in a way better for us because we don't want it to be remanded for further board proceedings. We want it to be reopened. Okay, so two things, or two related things. If we were to agree that at least the equitable towing analysis was that, we would still, wouldn't we still look at Merritt's question, i.e. when there's any chance he could prevail on the motion to reopen and motion to reconsider? There are two things because we have two different cases here, right? That's correct, Your Honor. The board seemed to assume that, well, it expressly assumed that he could demonstrate eligibility for asylum. It only addressed, it only denied based on the diligence issue. Well, it's specifically stated even assuming the petitioner is eligible for relief, but we've presented a fully documented asylum claim. He is asserting past persecution based on imputed sexual orientation based persecution. We've addressed that issue. We don't think that's the, we don't think that's going to go back to asylum. Isn't he, wouldn't he have been too late for his initial filing? Wouldn't it have been too late for asylum? In this case, the, he didn't, he didn't apply for asylum initially, right? They applied it for suspension. That's correct, Your Honor. His, his asylum application would have been due on April 198 when that went into, that was the one year deadline after the rule went into effect. We briefed the issue of, there's actually a crossover in this case between the one year bar issue and the diligence issue. And that's really the crux of our case. The, there's a clear, there's clear congressional directive to, for the agency to consider mental health in the context of delayed asylum claims. This was cited by the court in the legislative history in Vahoura. The, the holder, Senator Hash, during the conference committee report was mentioning that extraordinary circumstances that would extend may include mental health. So we think that it kind of collapses into one, in a sense. We also think that, that's in terms of... So, so going back to, forgive me, but, so going back to Judge Berzon's point, because this is my, in my notes, this is my difficulty as well. In order, if we're gonna talk about the motion to reopen, he's got to show a plausible path where he, that he would be entitled to relief. And so, is your best, which is what Judge Berzon was just asking, and that's in my notes too. So could you speak to that and just connect the dots and tell me what is your client's plausible path to, especially to the asylum claim? Let's start with asylum. He demonstrates past persecution on account of his imputed sexual orientation, which is a social group, recognized in numerous cases. He has a one-year bar issue. However, his PTSD diagnosis is an extraordinary circumstance that rendered it reasonable for him to delay in filing his asylum application, and that the filing date we would assert in this context was when we filed the motion to reopen. Sorry, which motion to reopen? The second one? Well, my first one for him, but the second of his motions. And there are new, the agency regularly grants asylum based on PTSD, late asylum claims based on PTSD at the adjudicatory level, your honor, the asylum office. This was arguably 18 years late. So I'm sorry, Judge Berzon, were you trying to follow up? I don't know. The board said nothing about the asylum claim, right? The BIA said nothing about it. That's correct. So could we even address the question, despite what I said? If we thought on the motion to reopen, it did address the merits of the motion to reconsider, but it didn't address the merits of the motion to reopen at all, right? That's correct, your honor. So the court cannot affirm the agency on that basis, the government, for example, is arguing for a departure bar, didn't address that either. We assert that there's a due process clause, if the court, if the motion to reopen is a constitutionally based one, then the departure bar could not apply because necessarily this is the statute. Well, whether it could or couldn't, the agency, the BIA didn't address it. It did initially find that the departure bar applied. Before the motion to reopen. In the, in the, his second motion to reopen, the ineffective assistance motion, it did also alternatively deny on the departure bar. If I may. Frankly, I thought the departure bar didn't apply because of Lynn. And that is because he didn't depart during his proceedings. So I thought it just doesn't apply. He didn't fight that case, but. I think that that's true, but they also argue that when there's a sui spontane motion, that there's a distinction, but usually that there's not a problem. In my experience, when it's an ineffective assistance of counsel motion, the board will reopen. So. So you're going to go to the motion to reconsider briefly or running out of time. I would like to focus, focus just on the first petition, please, for the purposes of the oral argument. The, the government, the board cited seeing the Gonzales, but actually I think that Avogadro, the holder really is more appropriate to consider it. So in seeing, not knowing about immigration law, beyond sophisticated, those are, there's not extraordinary circumstances. So that's kind of a straw man argument. In Avogadro, there was a seven year delay. And if it's tempting to just look at a number 16 years, seven years, but that's really not what the law says. The, the court's precedent requires a look beyond that. So for example, in, in Avogadro, the person during those seven years spoke to another attorney, not that ineffective initial attorney, but another attorney who said, Oh, just hold tight, wait two years, maybe the law will change. And he complained that that was part of why he delayed. And the court said, well, you didn't have a relationship with that person. The relationship issued, being able to have a relationship with an attorney because of mental health. That's, that's, I couldn't, but that's not what happened here. I mean, your, your client. So the news report in early 2017 consulted with an attorney. I'm not sure how much longer, cause I don't know what early 2017 is. It could be as much as four months later in April. Then consulted with a different attorney in July and then met with that attorney a few more times in the fall and didn't file until February, 2018. So it's a year from assuming the triggers and report. It's not, you know, the 2001 when he knew something was wrong. It's still a year before he filed something. And he has had a relationship apparently with an attorney since at least the previous July. Just to clarify during the time when he was not consulting at all, my point is that the, the mental health feature symptom where he's not able to trust anyone at all was potentially affecting his ability to develop a relationship with an attorney. He did not disclose the rape during the initial meetings with prior counselors, my understanding, and not even the first meetings with me. So I would argue that the, when the psychological evaluation was completed, actually stopped the tolling. And when, what was the date of that? That was January of 2018. Okay. Your time is up. We'll give you a minute to rebuttal. Thank you. Ms. Leach. Hey, please support Abigail Leach for the attorney general. This case presents two issues for the court to review. The first is whether the board abuses discretion in denying the 17-year untimely and number barred motion to reopen filed in February 2018, where he failed to establish that he acted with due diligence to warrant equitable tolling for such motions. In order to The standards are, the first is whether a reasonable person in petitioner's particular circumstances would have suspected the underlying fraud or error or ineffective assistance to support the motion to reopen. Circumstances were that he was, what, 19 years old or something like that. The proceedings were, at that point, were being controlled by his father. He didn't seem to have any direct connection to the lawyer. The lawyer had told him that he was going to apply for reopening. Then he told him that he had applied for reopening and had lost, but he didn't tell him the reason he lost was because he didn't, he was out of time. And then the further circumstances are that the issue, the current issue as to his, why there was ineffective assistance in addition to the time problem was that he didn't ask him or apparently deal with the child, then child independently at all. And didn't ask him what had happened to him. And that what had happened to him was a very deeply disturbing problem, which he had not revealed to anybody and which he is now said to have PTSD. So those are all the circumstances, right? And they're not which go into the reasonable person analysis. Now, is that what the board did? Okay. Well, the board found that he did not establish the due diligence, but when the court reviews, whether or not a person acted with due diligence for the motions to reopen, they first review whether a person in their particular circumstances would have become suspect of the fraud or error. And it's the government's position that no later than 2001, either in March, when the ninth later that year in September of 2001, when he was deported and then returned to the United States three days later. He still did not take any steps, which is the second standard and Abagayan, whether a reasonable person or whether they took reasonable steps to assert their interests, or if they were unaware of the fraud or position, but nothing in the board's opinion actually looks at his particular circumstances. The board cites to the motion, which discusses his personal circumstances, which only discusses the fact and his affidavit, which is cited in the board's decision says, I knew in 2001, that something had gone wrong in my case, that is, that's when they would have known he should have become suspect. He said, I knew in 2001 that I lost. Did he say I knew something had gone wrong? The particular wording is, I knew not later than 2001. I believe I can't, I don't have it in front of me. But I'm nearly certain that the exact wording is I knew not later than 2001, that something had gone wrong in my case. Can I stop you there, please? Because that's my, I don't think you need this for the government to prevail. But I am curious about why you're taking such a hard line position on it, frankly, he's, he's, he's a reasonable person. I think at that point, he's 19. He knows he's been deported. But he doesn't have to be unnoticed that there's some have some reason to suspect ineffective assistance by his lawyer. That's very different. Well, you would think a reasonable person in particular circumstances. Why? Why not? Why wouldn't he just understand that, according to the laws of the United States, he was not eligible to, you know, to stay here. I this this leap is the part of your argument that for me is not persuasive. I'll just give you one shot. I don't take a lot of your time on it. But I don't know why you're staking out this position. So could you enlighten me? Because a reasonable person in particular, not later than 2001, even before 2001, a reasonable person may have been on notice that their prior attorney was ineffective, particularly when the board issued or requested being on another issue in his prior case. It's reasonable circumstances person in his circumstance, a reasonable person, his circumstances, somebody who was lost at the Ninth Circuit. I'm sorry, I didn't hear them. Sorry. A reasonable person in his circumstance is someone who whose petition was denied at the Ninth Circuit and then thereafter was deported from the United States. Well, that's the circumstances. But I just gave you a whole bunch of other circumstances that were also his circumstances. And to which are you specifically referring to mental health diagnosis? Well, in part, but more that he was a child. He was dealing through his father. He he had no. And as Judge Christian suggested, he had no reason to think his lawyer was being ineffective. And the particular basis on which he was ineffective, i.e. not asking him personally anything about his own history, which would have discovered this as all his childhood trauma was it's self-traumatic. And then there are other cases, I believe, which. Things like rape and and very personal issues are recognized as being things that are hard to bring forward, especially if you're not asked about. So those are his circumstances. But the issue is the suspension of deportation proceedings where his prior attorney was ineffective. All of his symptoms and generalized anxiety and PTSD have to do with his new asylum claim. And the standard is not whether a reasonable person in their circumstance would have brought their their application for that relief earlier or more timely, but rather whether they would have had been suspect of the prior counsel's ineffectiveness during those proceedings and then whether they took any steps, reasonable steps to investigate. But what really bothers me is that there is nothing in the board opinion that takes account of any of those circumstances. Just says it doesn't notice his age or the fact that he wasn't even that he wasn't in control of this proceeding. The earlier one, it was his father who was involved because he was a child when it all began. And it doesn't just recognize this. None of them. It just says a reasonable person would have somehow realized that there was a problem. And he he explains why and when he realized it, which was only that we also left out of the other circumstances, which is that his lawyer was suspended from the practice of law for a good chunk of the time he was representing him and that he was that he only found out that his lawyer was a suspect lawyer at all until in 2017. That's also a circumstance. I apologize. The second standard. Oh, I'm sorry about the light. There's a light thing here going on. The second step in the obvious procedure is whether they whether they were ignorant of the fraud or error or ineffective underlying the motion, whether they took reasonable steps to assert their interest. I mean, is somebody supposed to suspect that his lawyer is criminal has has practiced in a is engaged in the unauthorized practice of law while they're representing him? Well, I wouldn't think that somebody would necessarily suspect that, but I would think that maybe they were on who was supposedly representing. He was wrong. He lost. But why does that lead you to think that your lawyer is is illegally practicing law when he's representing you? Well, during the war, when his appeal was pending before the board's decision in 2000, it requested additional briefing. And up until that point, Petitioner's prior counsel had been served with all of the hearing notices and documents from the board and all the agency. But in that case, where it requested additional briefing, I sent it directly to the Petitioner's family. That's it. Wait a minute. Didn't they? I think we checked on that. I think my notes show that they addressed it to his father. Isn't that right? It's to his father, his mother and to him. And I think there's one other person, I believe. It's one notice, right? Not not a bunch of notices. Is it one? It is not one notice. Do you have the ER site? Maybe I've I've got that wrong in my notes. I want to make I want to double check on that, please. I do. I can search for it. Sure. Yep. You bet. I am having some trouble hearing this. I'm not sure why, but I am having trouble. I'm sorry about that. Would you like me to repeat anything? Go ahead. I'm doing the best I can. Okay. So it's the government's position that he did not exercise due diligence in seeking to reopen his proceedings based on ineffective assistance of counsel. He did not take any steps after a person in Petitioner's particular circumstances would reasonably have been suspect of fraud or error underlying the motion. So is it the government's position that he didn't take reasonable steps in 2001 when he returned to the United States and he said he knew something wrong with his case or in 2017 after he saw the news television news program? I see that I'm out of time. Do you mind if I continue? Please. It's the government's position that he was on notice as of 2001 and did not take any steps at all to investigate the error or to assert his interests in either his suspension of deportation or his asylum claim where he says that had he been asked about it throughout his motion and his opening brief, the outcome of his proceedings may have been different. So had he exercised due diligence or taken any steps to assert his own interests, perhaps things could have been different. However, he did not exercise due diligence where he explicitly says he did not do anything because he thought his case was hopeless. Are you conceding the point, counsel? I'm not trying to be difficult, but are you conceding the point that after 2017, when we know he was on actual notice, that he responded diligently? No, no. That's what Judge Beatty is asking you. No, I apologize. Are you conceding that point? What about 2017? At that point, was he diligent? And if not, why not? You are out of time, but if you could respond to the question, I would appreciate it. Sure. He was not diligent because he doesn't explain what steps when he took them. We don't know exactly the timeline of when he found out. He saw it on TV that his prior counsel was criminally prosecuted. We don't know the exact steps he took and whether or not they were reasonable for somebody in his particular circumstances. So again, the government's position is that he was not duly diligent in exercising, or for equitable tolling of the time and number limitations on motions to re-advent and the government requests that the court deny the petition's purview. Thank you. Okay, Mr. Crabtree. Thank you. When he was deported, a reasonable person would question if maybe something had happened in his case that was wrong. And I think that the big question mark is what was he doing during those 16 years? And that's why we feel that the psychological diagnosis is so important and the specific information we provided. The board, I would point out that- I have a question. Do we have any knowledge about why he came forward in 2018? I mean, it's kind of, you know, he opened a business, everything was going okay. And then he realized, I realized that something had happened and he wants to straighten this out. He had a relatively young child. He's married to a citizen. But there is no indication that DHS had any interest? There was no contact with DHS, no. The board was not aware that prior counsel was suspended from practice. It did not suspend him for a number of years after the state bar just barred him. So to the extent that anything in the board's decision may have notified, tipped him off, that is, you know, I think not, that should be considered. And I also just say the test is when he conclusively discovered the ineffective assistance. And that was when the psych eval was received because that's when we knew that he could qualify for asylum and overcome the one-year bar. And I'll rest on that. Mr. Crabtree, let me circle back to the merits and Judge Christin and Judge Berzon ask you, what's his path? Maybe it's reopened any petitions for asylum. And you said he would seek equitable tolling on the untimely asylum petition based on his PTSD. He would demonstrate past persecution based on the rape and the abuse he suffered as a child. If he did that, then presumably he'd have the, what he would have the presumption of fear of future persecution, which is rebuttable. So now we're in a circumstance where it's something like 30 years later and he's an adult. So how does, where's his path to establish any well-founded fear of future persecution? Under agency regulations, he would be eligible for humanitarian asylum, either because of the severe and atrocious nature of the past persecution, or because he would suffer other serious harm that doesn't necessarily have to have a nexus to a protected characteristic. So in cases like this, most child abuse asylum claims fit this that the mental, the lack of access to mental health services, for example, would be part of the other serious harm after they are removed. Or I think particularly in this case, the severe and atrocious nature makes it reasonable for him to not want to return. The board's case matter of LS kind of would use the law on that issue. Can I ask two questions about what's before us? The, there was the departure bar issue. I gather it's not before us because the board is not defending the either decision on that ground. Is that right? I, the board found the departure bar applied. We briefed that issue your honor, but we think that it's clearly disposed of by the fact that by the due process nature of the motion itself. But it's not in the government's brief. Am I right about that? I thought that it was, but I, I'm, I was focusing. I need to find that out. Okay. Second of all, you're not defending, you don't seem to be testing any longer the denial of the motion to reconsider. Is that right? Um, we are your honor, just because in the interest of time, but we, I mean, that issue is a legal issue that has never been decided in a presidential issue, a case in this court. Is that right? I, whether the Pereira decision applies where the original document was an OSC. That's correct. Your honor. The, the, the difficulty for us is that we're asserting that Pereira is really controlling and that the court should just follow Pereira. And then also that, uh, Lorenzo Lopez, the extension of Lorenzo Lopez kind of applies, but then that is before the en banc court. So, uh, and these Tavez as well. So it's kind of a little bit mixed up there, but, um, we, on that point, I would just say that the, um, uh, the actual stop time rule itself says that the person has to be served with the notice to appear. And there is precedent saying that that intends to apply to deportation cases. And of course that would require the order should be the initiating document, but it's still said that they have to be served with the notice. And it, and it references the current statute as the required definitional elements of that notice. Now the word show cause in the past may very well have included those definitional elements of the, of the notice to appear. The only difference was it wasn't required at the time as a matter of the notice statute that, that it wasn't one document, but oftentimes it would be. So that's kind of the, um, uh, our, our argument on that point. Okay. Thank you very much. We'll be on your time. And I will therefore, um, submit the case of Gonzalez Rodriguez versus Rosen.
judges: Berzon, Christen, Bade